UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CASEY BRAGG, on behalf of minor child, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )    1:14-cv-00413-JCN |
| | ) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER, | ) |
| SOCIAL SECURITY ADMINISTRATION | ) |
| | ) |
|     Defendant | ) |

## MEMORANDUM OF DECISION[1]

In this action, Plaintiff Casey Bragg seeks supplemental security income benefits for her minor child, under Title XVI of the Social Security Act. Defendant Commissioner, after concluding that Plaintiff's child does not have an impairment or combination of impairments that meets or equals a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1, denied Plaintiff's request for benefits.  Plaintiff challenges Defendant's determination.

As explained below, following a review of the record, and after consideration of the parties' arguments, the Court affirms the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the July 23, 2013, decision of the Administrative Law Judge (ALJ) (ECF No. 9-2).[2]  The ALJ's decision tracks the evaluation process for determining disability for children.  *See* 20 C.F.R. § 416.924.

In relevant part, the ALJ found that Plaintiff's child has severe impairments consisting of

---

[1] The parties have filed a consent authorizing the undersigned to conduct any and all proceedings and enter a final order and judgment in this matter.

[2] Because the Appeals Council "found no reason" to review that decision, the Acting Commissioner's final decision is the ALJ's decision.

attention deficit hyperactivity disorder improved with medicine, mood disorder, borderline IQ, oppositional disorder, and an anxiety disorder, but that the impairments, even in combination, do not meet, medically equal, or functionally equal the severity of a listing.  (ALJ's Decision ¶¶ 3-5.)  The ALJ, therefore, concluded that the child was not disabled.  (*Id.* ¶ 6.)

## STANDARD OF REVIEW

The Court must affirm the administrative decision provided that the ALJ applied the correct legal standard, and provided that the decision is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome.  *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981).  "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

According to Plaintiff, the ALJ erred when she concluded that her minor child does not suffer from marked limitations (or worse) in (1) the domain of acquiring and using information and (2) the domain of attending and completing tasks.[3]  (Statement of Errors at 2-3, ECF No. 11.)  Plaintiff contends that the ALJ erroneously gave great weight to the August 3, 2012, assessment of functioning opinion of Maine Disability Determination Services consulting expert, Lewis Lester, Ph.D. (Ex. 3A).  Plaintiff maintains that Dr. Lester's opinion is not entitled to great weight

---

[3] Plaintiff does not dispute the ALJ's findings that the child has no limitation in the domains of interacting and relating with others, moving about and manipulating objects, caring for personal needs, or health and physical well-being.

2

because it is outweighed by, and fails to take into consideration, the subsequent Child Assessment made by Susy Sanders, Ph.D. CTS (Ex. 7F) and the opinion of Marcialee Ledbetter, MD, MPH, FAPA (Ex. 8F).  Dr. Ledbetter's opinion includes a consideration of the findings of the Child Assessment.  Plaintiff contends that the Child Assessment and the records and conclusions of Drs. Sanders and Ledbetter establish that the child has "marked" limitation in both of the relevant domains, and should have been afforded controlling weight.

A.    **The Functional Equivalence Standard**

A disability finding is warranted when a child has an impairment or combination of impairments that (a) meets a listing in the Commissioner's Listing of Impairments in Appendix 1 of Part 404, subpart P, (b) has medical equivalence to a listing, or (c) has functional equivalence to a listing.  20 C.F.R. §§ 416.925 – 416.926a.  Here, this issue is whether the minor child has an impairment or combination of impairments that is functionally equivalent to a listing.  To constitute a disability, therefore, the impairments must result in a "marked" limitation in at least two of six domains of activity, or "extreme" limitation in one domain.  *Id.* § 416.926a(d).  The six domains are:  (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being.  *Id.* § 416.926a(b)(1).

A marked limitation exists if the impairment "interferes seriously with [one's] ability to independently initiate, sustain, or complete activities."  *Id.* § 416.926a(e)(2)(i).  "It is the equivalent of functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  *Id.*  An extreme limitation interferes "very seriously" with activities.  *Id.* § 416.926a(e)(3)(i).  "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three

standard deviations below the mean." *Id.* Although test scores are a valuable source of relevant evidence for assessing disability in a child, the Commissioner may find that a child is not disabled even if the test scores suggest two or more marked limitations or one or more extreme limitations "if other information in [one's] case record shows that [the person's] functioning in day-to-day activities is not seriously or very seriously limited by [the person's] impairment(s). *Id.* § 416.926a(e)(4)(ii)(B). Conversely, a score that is slightly better than reflected by actual functioning does not rule out a finding of disability in the context of a functional equivalence inquiry. *Id.* § 416.926a(e)(4)(ii)(A).

With respect to acquiring and using information, an adolescent's expected ability is described as follows:

> In middle and high school, you should continue to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). You should also be able to use what you have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). You should also learn to apply these skills in practical ways that will help you enter the workplace after you finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).

20 C.F.R. § 416.926a(g)(v).

As to attending and completing tasks, an adolescent's level of functioning should satisfy the following:

> In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects. You should also be able to organize your materials and to plan your time in order to complete school tasks and assignments. In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting.

*Id.* § 416.926a(h)(2)(v).

In October 2012, Dr. Sanders performed a number of tests on the child. (Exh. 7F.) In addition to measuring low cognitive performance, Dr. Sanders diagnosed post-traumatic stress disorder and mood disorder with irritability. (R. 413.) She observed that the child's problems with inattention may stem from mood and anxiety rather than attention deficit hyperactivity disorder. (*Id.*) Dr. Sanders believed the findings reflected a complex post-traumatic stress disorder with symptoms that mask the underlying trauma symptoms. (*Id.*) Although the records do not clearly establish a correlation between the Vineland test and either of the pertinent domains, Dr. Sanders noted scores that were as much as three standard deviations below normal, as well as a composite score that was two standard deviations below normal. (R. 412.) In February 2013, a treating source, Dr. Ledbetter, interpreting the test scores assessed by Dr. Sanders, advocated that the child receive additional intervention and support in the school setting. (Ex. 8F.)

The ALJ found that Plaintiff's limitations in the two domains (i.e., acquiring and using information, attending and completing tasks) were "less than marked." (R. 19, 20.) In support of her finding, the ALJ gave greatest weight to the August 2012 opinion of non-examining, consulting physician Lewis Lester, Ph.D. (Exh. 3A). Dr. Lester's findings are recorded on a form that reflects that he reviewed the medical record that was compiled through July 31, 2012. (R. 59 – 60.) Dr. Lester also considered the January 2012 examination report of consulting physician Edward Quinn, Ph.D. (Exh. 3F). In his notes of his mental status examination of the child, Dr. Quinn documented a "logical and goal oriented" thought process; low average to borderline intelligence; attention, concentration and memory appearing to be within normal limits; and a lack of capacity for abstract thought; but an ability to complete four-step simple instructions. (R. 354.) In his medical source statement, Dr. Quinn wrote, *inter alia*, that the child "may have some difficulty

5

completing complex and detailed job instructions due to some potential cognitive issues." (R. 354 – 55.) Based largely on Dr. Quinn's psychological evaluation, and the notes of the child's case manager and primary care provider, Dr. Lester assessed less than marked limitation in both of the domains. (R. 62 – 63.)

In addition to her reliance on Dr. Lester's assessment, the ALJ also gave significant weight to the observations of a mental health counselor in October 2011, while the child lived in Massachusetts and attended a school where he received academic support through an individualized education program. The counselor described Plaintiff's cognitive function as within normal limits "as far as I can observe," and wrote that in terms of concentration, persistence, and pace, the child appeared to function well on his medications. (Exh. 2F, R. 264 – 65.)

The ALJ also placed significant weight on her assessment of the child's educational records and a function report provided by Plaintiff and an educator. (R. 19.) The educational records reflect that the child achieved passing grades in Massachusetts schools when a limited (full inclusion) IEP was in place (Exh. 1E); an ability to understand, carry out, and remember simple instructions (Exh. 2E, R. 168); an ability to attend to art projects and chores, but not homework (R. 171); and a Maine teacher's view, after one and one-half months with the child, that no problems were observed in either of the relevant domains.[4] (Exh. 6E, R. 191 – 192.) Among the inferences that she drew from the evidence, the ALJ observed that positive grades that the child achieved in computer science, technology, and art suggested the child has the ability to focus on subjects of interest. (R. 19.)

The ALJ not only cited particular evidence that supported her determination, but she also explained her decision not to rely on the records and opinions of Drs. Sanders and Ledbetter

---

[4] There was a suggestion on the record that the child received IEP service in his first six months of school in Maine and that his performance fell off upon the discontinuance of services. (Exh. 8F, R. 415.)

records regarding the limitation determination. In particular, the ALJ noted that while Dr. Sanders diagnosed complex post-traumatic stress disorder, she also administered a test that placed the child within normal limits on the trauma score. (R. 17; *see also* Exh. 7F, R. 412: "On the Trauma Checklist for Children, Jonah had no clinically significant scores."). According to the ALJ, Dr. Sanders "made diagnostic conclusions that were not supported in the record or by her own testing." (R. 17.) The ALJ also found that Dr. Sanders was unfamiliar with the child's medical records. (*Id.*) As for Dr. Ledbetter, the ALJ concluded that her recommendations deserved only some weight because she was focused on advocating for academic services and did not provide a functional assessment. (R. 18.) Consistent with that view, because Drs. Sanders and Ledbetter were focused on the child's needs at school, the ALJ concluded that their findings "would not be expected to change Dr. Lester's opinions or recommendations greatly." (R. 18.)

One of an ALJ's principal responsibilities is to resolve conflicts in the evidence. *Rodriguez v. Sect'y of Health and Human Serv.*, 647 F.2d 218, 222 (1st Cir. 1981). In accordance with that responsibility, an ALJ is competent to assess whether subsequent evidence would have materially altered an expert's opinion. *Breingan v. Astrue*, No. 10-92, 2011 WL 148813, at \*6 n.5 (D. Me. Jan. 17, 2011), *aff'd*, 2011 WL 709856 (D. Me. Feb. 22, 2011). In this case, the ALJ adequately explained her decision to afford little weight to the opinions of Drs. Sanders and Ledbetter, and to give greater weight to the opinion of Dr. Lester. Similarly, the ALJ's determination that the records and opinions of Drs. Sanders and Ledbetter would not materially alter Dr. Lester's opinion is within her authority and is supported by substantial evidence on the record.

A review of the record thus reveals that in accordance with her responsibility and obligation, the ALJ considered and weighed all of the evidence, including the expert evidence, and resolved any relevant conflicts in the evidence. *Rodriguez*, 647 F.2d at 222 ("resolution of conflicts

in the evidence and the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or the courts.")  In short, the ALJ's ultimate determination on the disability issue is supported by substantial evidence on the record.

## CONCLUSION

Based on the foregoing analysis, the Court affirms the administrative decision.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 29th day of July, 2015.